REGAN, Judge.
Plaintiff, Francis L. Byrnes, an employee, instituted this suit against defendant, St. Charles' Dairy, Inc., his employer, endeavoring to recover the sum of $713, representing the difference between the wage rate that was actually paid and the wage rate that should have been paid for a period of time which occurred between December 27, 1951, and March 16, 1953, by virtue of the provisions of a contract entered into between General Truck Drivers, Chauffeurs, •• Warehousemen and Helpers, Local 270, A.F.L. and the St. Charles Dairy, Inc., and which was in effect from December 27, 1951, until March of 1953.
Defendant answered and generally denied the allegations of plaintiff’s petition.
From a judgment in favor of plaintiff as prayed for, defendant has prosecuted this appeal. Plaintiff has answered the appeal and asserts that it is frivolous, therefore, *585 he should be compensated therefor as damages 10% of the amount of the judgment rendered herein. • -
In order to facilitate and expedite the trial thereof this case was consolidated with a similar one which encompassed substantially the same factual and legal issues. The suit referred to is entitled Fettis v. St. Charles Dairy, Inc., La.App., 79 So.2d 587. In this case Fettis claimed the sum of $950 as wages due him by the defendant. From a judgment therein as prayed for defendant prosecuted an appeal to this court.
The record reveals that the defendant and the General Truck Drivers, Chauffeurs, .Warehousemen and Helpers, Local 270, A.F.L., entered into a contract on December 28, 1951, effective as of December 27, 1951, “with respect to wages and working conditions for employees covered in this agreement.” The contract was signed on behalf of the St. Charles Dairy, Inc., by Mrs. Marjorie H. Maitrejean, Representative, and on behalf of the union by Manny Moore, President and Business Manager. On June 1, 1952, this contract expired, however, it was continued in effect by virtue of an addenda, dated August 15, 1952, until June 1, 1953, which was signed on behalf of the St. Charles Dairy, Inc., by Lloyd H. Telotte, Production Manager, and then approved in writing by the attorney for St. Charles Dairy, Inc., and on behalf of the union by Manny Moore, President and Business Manager.
Plaintiff had been in the service of the defendant about nine years and was employed as a “checker” during the existence of the foregoing contract. Prior to the institution of this suit he made demand upon defendant for the sum of $713, representing the difference between the wages that had actually been paid to him and the wages that he contended should have been paid to him in conformity with the contract that had been mutually accepted and acted upon both by the employees and the defendant. Apparently plaintiff’s claim for additional wages was ignored because, on September 14, 1953, this suit was instituted claiming the sum set forth hereinabove which had been earned by him during a period of time which occurred between December 27, 1951 and March 16, 1953. In substantiation thereof he requested that the defendant be ordered, in conformity with the provisions of LSA-R.S. 13:3'782 (Discovery and Production of Documents, etc.) to show cause why he should not be permitted to examine “all books * * * pertaining to hours worked, wages paid, and vacations granted by St. Charles Dairy, Inc., to plaintiff herein from December 27th, 1951 through March 16, 1953, "at the place of business of the defendant * *
Plaintiff was never permitted to examine defendant’s books and, therefore, on October 13, 1953, the judge of, the court below, in conformity with the provisions of LSA-R.S. 13:3792, subd. B (1) signed an order establishing as a fact, defendant’s indebtedness to the plaintiff in the amount of $713, which represented the difference between the wages that were actually paid and the wages which should have been paid during the period claimed and that “defendant had ratified and put in effect the union contract which was to take effect * * * June 1st, 1952.” Despite the foregoing order, ’plairttifi was placed under oath and then convincingly testified that he had earned $713 over and above thé sum which he had been paid by the ■ defendant and this very detailed testimony 'appears in the record unrebutted.
• 'Counsel- for defendant has insisted on appeal, both in brief and in oral argument, that plaintiff has not discharged the burden of proof imposed on him and' his suit should, therefore; be dismissed. In substantiation thereof counsel directs our attention to Article 25 of the contract dated December 28, 1951, which reads:
“It is understood that this Agreement is subject to the approval of The Wage Stabilization Board. It is agreed that if the increases covered by this agreement are not fully pér- *586 mitted, the increases actually permitted by the Wage Stabilization Board will prevail. Rejection by the Wage Stabilization Board of any or all of. the agreed increases shall in no manner affect the validity of the remainder of the agreement. However, should future changes in Wage Stabilization regulations during the life hereof permit any of the increases set forth herein, then such increases shall be put into effect.”
Counsel then points out that "by reference to the contract it will be seen that there is no endorsement of approval by the Wage Stabilization Board;” therefore, a sacramental element in the chain of proof of plaintiff’s case was the establishment, as a fact, that the contract had been approved by the Wage Stabilization Board, and since plaintiff has failed to adduce such proof, the contract is invalid and the judgment should be reversed and plaintiff’s suit dismissed.
Plaintiff, on the other hand, contends that if the wage rate provided 'in the contract was not legal, the defendant was obligated to urge the illegality in his pleadings and to prove it.
Essentially the problem raised by the defendant, on appeal, resolves itself, in the final analysis, into whether or not the wage increase was legal or illegal by virtue of the provisions of the Defense Production Act of 1950, Public Law 774, 81st Congress, 50 U.S.C.A.Appendix, § 2Ó61 et seq., Executive Order No. 10161, 15 F.R. 6105, 50-U.S.C.A.Appendix, §'2071 note, therefore, if thel'.contract was illegal, it should have been urged in the defendant’s pleadings and affirmatively proven by it in defense of plaintiff’s suit.
In 12 American Jurisprudence Page 744, Verbo “contracts, Section 224, it is stated:
“There is a presumption in favor of the legality of an agreement; and although an agreement is illegal, if the illegality does not appear on its face, it must be. proved by the person who asserts it.”
This rule of law has likewise been recognized in our jurisprudence and was set at rest over one hundred years ago in Harvey v. Fitzgerald, 6 Martin, O.S., 530, and the principle has been reiterated in subsequent cases. Therein the Court expressed the opinion:
“Since this cause was argued on its merits, a new discussion has taken place, at the request of the court, on the question whether the defendant can take advantage of the illegality of the contract, without having alleged it in his answer. Our laws on the subject of the practice of courts in civil cases contain provisions tending as much as possible to simplify it, and relieve us from all unnecessary technical rules relating to special pleadings. But parties in a suit are bound on the one side, plainly and substantially to set forth the cause of action, and on the other, the means of defense — a denial of the facts stated in the petition, or a statement of other facts in avoidance' of those. It is necessary. to a fair administration of justice, that such certainty should prevail in pleading, as to put each party on his guard. The rule of law, which requires that judgment should be rendered super allegata et probata, is founded on common sense and principles of justice. The illegality of a contract, arising from transactions in fraudem legis, may be taken advantage of by a plea in bar, a peremptory exception of the civil law, and should be regularly pleaded as that of doli mali or rei judicatae. Such pleas, of necessity, carry with them a suggestion of, facts, in avoidance of those stated by the plaintiff, and often require testimonial proof of their truth, which the opposite party may rebut.”
.While counsel has urged upon us the frivolity of defendant’s appeal, our examination of both the pleadings and the record discloses that questions of both fact *587 and law were posed for our consideration. We are, therefore, of the opinion that the appeal taken by the defendant was not frivolous.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.